IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALEXANDER FRANCIS NORMAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:23-CV-337-KFP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Alexander Francis Normand filed this action seeking review of the Social Security Administration's decision to deny his application for supplemental security income (SSI). The Court construes Plaintiff's supporting brief (Doc. 7) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 8) as a motion for summary judgment. After scrutiny of the record and motions submitted by the parties, the Court finds that Plaintiff's motion is due to be DENIED, the Commissioner's motion is due to be GRANTED, and the decision of the Commissioner must be AFFIRMED.

**I.    STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.   PROCEDURAL BACKGROUND

Plaintiff applied for SSI with an alleged disability onset date of July 10, 2019. R. 19. When his initial application and reconsideration appeal were denied, he requested a hearing before an Administrative Law Judge. *Id*. The ALJ issued an unfavorable decision on November 2, 2022, and the Appeals Council denied Plaintiff's request for review of that decision. *See* R. 19–31. Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

## III.   THE ALJ'S DECISION

The ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: seizure disorder, attention deficit hyperactivity disorder (ADHD), obsessive-compulsive disorder (OCD), post-traumatic stress disorder (PTSD), auditory processing disorder, anxiety disorder, and insomnia. R. 21. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that would satisfy the listing impairments found in 20 CFR Part 404, Subpart P, Appendix 1. R. 22.

The ALJ then determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> The claimant can perform no climbing of ladders, ropes, or scaffolds. He must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery. He cannot operate motor vehicles or work in close proximity to unprotected bodies of water. The claimant can perform simple routine tasks involving no more than simple, one-to-two-step instructions and simple work-related decisions with infrequent and gradually introduced workplace changes. He can have occasional and non-transactional interaction with the public, non-transactional interaction with co-workers, and occasional interaction with supervisors. He can sustain concentration and attention for two-hour periods with customary breaks. He would have one unplanned absence per month.

R. 24. The ALJ determined Plaintiff had no relevant past work experience. *Id*. at 30. He also determined, based on Plaintiff's age, education, work experience, and RFC, that jobs exist in significant numbers in the national economy that Plaintiff can perform, specifically a kitchen helper, hospital cleaner, and housekeeper. R. 31. Thus, the ALJ concluded that Plaintiff is not disabled. *Id*.

## IV.   PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff's brief sets forth one issue for review: he asserts the ALJ's rationale regarding the persuasiveness of Dr. Leah McKnight-Haas's opinion is not supported by substantial evidence. He then argues the ALJ erred by (1) relying on "normal" mental status findings from some treatment visits but omitting other findings; (2) finding Dr. McKnight-Haas's opinion to be inconsistent with the opinion of Dr. Dale Sanders, a consultative psychological examiner; (3) relying on certain activities of daily living; and (4) to the extent there was uncertainty about Dr. McKnight-Haas's opinion, failing to contact her and seek additional information as to the bases of her opinion. Doc. 7 at 10–13.

## V. APPLICABLE REGULATIONS

The regulations applicable to claims filed after March 2017 provide the following:

[T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)–(c) (2020). [In particular, a]n ALJ must explain how he considered the factors of supportability and consistency. [*See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id*. The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021). An ALJ "is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion . . . . Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055–56 (S.D. Ala. 2016), *judgment entered,* No. CV 14-449-C, 2016 WL 1357753 (S.D. Ala. Apr. 5, 2016). In fact, "an ALJ's RFC assessment need not 'match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the

RFC rests with the ALJ.'" *Boone v. Kijakazi*, No. 1: 21-CV-34-JTA, 2022 WL 4133288, at *5 (M.D. Ala. Sept. 12, 2022) (citation omitted).

## VI. DISCUSSION

### A. Dr. McKnight-Haas's Opinion

On January 20, 2022, Dr. McKnight-Haas completed a "Clinical Assessment of Pain" and a report of Plaintiff's mental impairments.[1] R. 323–26. In her impairment assessment, she rated Plaintiff as having *marked* limitations in the following areas:

- Maintaining attention and concentration for extended periods;
- Responding appropriately to supervision;
- Being aware of normal hazards and taking appropriate precautions;
- Engaging in daily activities, such as attending meetings (church, school, lodge, etc.), working around the house, and socializing with friends and neighbors; and
- Understanding, remembering, and carrying out complex instructions.

She further found that Plaintiff had *extreme* limitations in the following areas:

- Sustaining a routine without special supervision;
- Completing a normal workday and workweek without interruptions from psychologically-based symptoms;
- Performing at a consistent pace without an unreasonable number and length of rest periods; and
- Responding appropriately to changes in the work setting and responding to customary work pressures.

R. 324–326. In the remaining areas, Dr. McKnight-Haas rated Plaintiff as having only mild or moderate limitations.[2] *Id*. She commented that he "has cognitive impairment, auditory

---

[1] The ALJ and Defendant date the report in January 2020 (R. 28, Doc. 8 at 5); however, it appears to be dated January 20, 2022 (R. 326). The Court finds this error was immaterial to the ALJ's analysis and ultimate conclusion.

[2] She rated Plaintiff as mildly limited in the ability to understand, remember, and carry out repetitive tasks. R. 324. She rated him moderately limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual, interact appropriately with the general public, ask simple questions or

5

processing disorder and generalized anxiety. He also has a seizure disorder. He is dependent on mother for assistance with instrumental activities of daily living." R. 326.

In his decision, the ALJ considered whether Plaintiff's mental impairment was severe enough to meet the "Paragraph B" criteria of Listings 12.06, 12.11, and 12.15. Although Plaintiff did not meet the Paragraph B listing criteria, the ALJ found him moderately limited in each of the four broad areas of functioning: understanding and memory, sustained concentration or persistence, social interaction, and adaption. R. 22–23. In evaluating Dr. McKnight-Haas's report, the ALJ stated:

> [Her] mental status findings were normal at office visits with the claimant in January and April 2022. Nor is assessment of marked and extreme mental limitation consistent with Dr. Sanders' report from the consultative psychological exam in November 2021, which shows generally adequate social functioning despite exhibited anxious and depressed mood and affect, that the claimant had appropriate attentional skills, and that he evidenced appropriate thought process and content as evidenced by formulating [well-constructed] sentences. As such, Dr. McKnight-Haas' assessment of more than moderate limitation in the claimant's mental functioning is not persuasive.

R. 28 (internal citations omitted). Thus, the only portions of Dr. McKnight-Haas's report at issue—the only portions found to be unpersuasive—are her "marked" and "extreme" impairment ratings. After a careful examination of the record, the Court finds the ALJ provided a sufficient rationale to link substantial record evidence to his legal conclusions and that his decision is supported by substantial evidence. *Nichols v. Kijakazi*, No. 3:20-

---

request assistance, get along with co-workers or peers, and understand, remember, and carry out simple instructions. R. 324–25. She also rated him as moderately limited in his constriction of interests and deterioration of personal habits. R. 325.

CV-224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)).

In December 2021 Dr. Elizabeth Fair, a state agency psychological consultant, completed a disability determination explanation at the initial level that encompassed Plaintiff's medical records from 2012–21, including Dr. McKnight-Haas's records. R. 53. Based on this review, Dr. Fair found Plaintiff to have no more than moderate mental impairments for any ability within the four areas of functioning. R. 59–60. For each impairment that Dr. McKnight-Haas rated as marked or extreme, with one exception,[3] Dr. Fair found Plaintiff to be moderately limited or not significantly limited.[4] *Id*. Similarly, Dr. Patrick Peterson, also a state agency psychology consultant, completed a disability determination explanation at the reconsideration level in April 2022, and this review included Plaintiff's medical records through April 2022. Dr. Peterson found that Plaintiff had moderate limitations in interacting with others but no limitations in understanding, remembering, and applying information and only mild limitations concentrating, persisting, maintaining pace, and adapting and managing oneself. R. 67. The ALJ found both of these opinions generally persuasive. R. 30.

Plaintiff fails to acknowledge the assessments of the state agency consultants and makes no argument that the ALJ erred in his consideration of the assessments.[5] An ALJ is

---

[3] Dr. Fair did not offer an opinion specifically on Plaintiff's ability to engage in daily activities. R. 59–60.

[4] Dr. Fair also found that Plaintiff was not significantly limited in areas where Dr. McKnight-Haas rated him as moderately impaired, such as the ability to understand, remember, and carry out simple instructions; ask simple questions and get assistance; and perform within a schedule, maintain regular attendance, and be punctual. R. 59–60, 323–24.

[5] A state agency medical consultant's opinion can constitute substantial evidence to support the ALJ's RFC finding. *Young v. Soc. Security Administration, Comm'r*, No. 7:22-CV-188-HNJ, 2023 WL 2671383, at *8

7

permitted to adopt parts of a medical opinion and reject others, and "the regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Additionally, there is no legal requirement that an ALJ explain each limitation or restriction he adopts or fails to adopt. *Donnie R. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-183-RGV, 2022 WL 16702517, at *13 (N.D. Ga. Mar. 30, 2022); *see also K.T.B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-110-MSH, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021) (explaining that ALJ does not have to accept opinion wholly or incorporate any and all limitations into RFC merely because he finds source persuasive). As a result, the ALJ was free to adopt Dr. McKnight-Haas's moderate impairment ratings and reject her marked and extreme limitations, and the Court finds the assessments of Drs. Fair and Peterson, which the ALJ found persuasive, constitute substantial evidence supporting the ALJ's rejection of those limitations.

Therefore, Plaintiff's arguments—that the ALJ erred in relying on normal mental status findings from particular visits with Dr. McKnight-Haas, erred in his comparison of

---

(N.D. Ala. Mar. 28, 2023). In fact, social security regulations require an ALJ to consider these opinions as he would any other medical opinion. *Id.* (citing 20 C.F.R. § 416.913a(b)(1) (stating an ALJ must consider prior administrative medical findings from federal or state agency medical or psychological consultants, as appropriate, because they are "highly qualified and experts in Social Security disability evaluation") and *Gordon v. Saul*, No. 8:18-CV-829-T-SPF, 2019 WL 4254470, at *5 (M.D. Fla. Sept. 9, 2019) (recognizing that state agency medical and psychological consultants are "highly qualified," that their opinions may be considered medical opinions, and that their findings and evidence are treated similarly to the medical opinion of any other source) (citing 20 C.F.R. § 416.913a(b)).

Dr. McKnight-Haas's opinion with Dr. Sanders's opinion, and erred in relying on Plaintiff's activities of daily living—are unavailing. Even if this evidence supports Dr. McKnight-Haas's marked and extreme limitations, Plaintiff cannot merely point to records supporting certain restrictions; he must show the absence of substantial evidence supporting the ALJ's determination. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (stating under substantial-evidence standard plaintiff "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Plaintiff has not done so here, as the evidence he cites fails to negate the assessments of Drs. Fair and Peterson, and the Court may not reweigh the evidence in favor of Dr. McKnight-Haas's opinion and against the assessments of Drs. Fair and Peterson.

### B. Plaintiff's Arguments in Support of the Limitations in Dr. McKnight-Haas's Assessment

Although the Court concludes the reports of Drs. Fair and Peterson constitute substantial evidence supporting the ALJ's determination that Dr. McKnight-Haas's marked and extreme limitations are unpersuasive, it will address Plaintiff's arguments in support of those limitations.[6]

---

[6] Under the new regulations, the ALJ "must only explain whether a source statement is persuasive considering its supportability in, and consistency with, the medical evidence as a whole." *K.T.B.*, 2021 WL 5906372, at *2) (citations omitted). Plaintiff does not argue that the ALJ failed to adequately explain the persuasiveness of any medical source in terms of supportability or consistency, including that of Dr. McKnight-Haas. Instead, he argues the ALJ erred in the rationale used to discount Dr. McKnight-Haas's opinion (relying on normal mental status findings, an incorrect comparison with Dr. Sanders's opinion, and activities of daily living).

### 1.     ALJ's Reliance on Normal Mental Status Findings

Plaintiff contends the ALJ erred in relying on normal mental status findings from his treatment records with Dr. McKnight-Haas when evaluating the doctor's assessment. The medical records from 2018 and 2019—only one visit in September 2018 and only one visit in February 2019—reflect normal mental status findings and conservative treatment, and they also document that Plaintiff's mood and anxiety disorder were improving with medication (Celexa 20 mg). R. 291–295.

After the February 2019 visit, Plaintiff went 27 months with no mental health visits. Then in May 2021 he saw Melinda Turner, a CRNP in Dr. McKnight-Haas's office, and reported that he was trying to get disability, that his anxiety was worsening, that he was unable to come to the doctor because he had no insurance, and that he wanted to increase his dosage of Celexa. R. 299. However, his mental and psychological findings were again normal, and he denied depression or abnormal thoughts or actions. R. 302. His Celexa was increased from 20 mg to 40 mg. R. 302.

Next, he had a telehealth appointment with Turner in October 2021 and reported the Celexa 40 mg was making him drowsy. R. 328. He denied feeling depressed but asked for something to take as needed for anxiety. *Id*. His Celexa was decreased to 20 mg, and he was prescribed Buspar as needed. R. 328-31.

He saw Dr. McKnight-Haas in January 2022 and reported the Buspar made him drowsy and caused mood swings. R. 332. He said his mood swings were not well controlled

on Celexa 40 mg[7] and that he felt upset and emotional. *Id*. The doctor noted that he looked to his mother for assistance in answering questions and that he had severe anxiety and depression along with cognitive issues.[8] R. 332. Again, all mental status findings were normal. R. 334. He was given instructions to titrate for transitioning from Celexa to Effexor 75 mg at night. R. 334.

Finally, in April 2022, Plaintiff presented for a "routine interval follow-up visit." R. 348. He was still taking Celexa 20 mg, which he said was helping with his anger, but he reported feeling anxious and worried about things out of his control. R. 348. All mental status findings were normal. R. 350. Dr. McKnight-Haas added hydroxyzine 25mg on an as-needed basis and told Plaintiff to return in three months. R. 351.

Plaintiff bases his argument regarding normal mental status findings on the most recent medical records, which do reflect complaints of worsening anxiety and mood swings, reports of feeling upset and emotional, an apparent need to rely on his mother to answer questions, and concerns that his medication was not working. However, it is clear the ALJ considered these records, as he detailed the treatment records in his decision, and it is clear that, despite Plaintiff's complaints, Dr. McKnight-Haas's treatment never deviated from "routine and conservative mental health treatment [and] management of psychotropic medication." R. 26, 30. Therefore, the Court is satisfied that Plaintiff's treatment records with Dr. McKnight-Haas, including the normal mental status findings,

---

[7] Although Plaintiff's Celexa dosage was decreased to 20 mg at the October 2021 visit, at this visit Dr. McKnight-Haas noted that he was taking Celexa 40 mg. R. 331–32.
[8] As mentioned above, before this visit Plaintiff had denied feelings of depression.

were considered with the record as a whole when evaluating Dr. McKnight-Haas's opinion, and the Court may not now reweigh that evidence.

### 2. Comparison with Dr. Sanders's Assessment

Plaintiff next claims the ALJ erroneously found Dr. McKnight-Haas's assessment to be inconsistent with Dr. Sanders's assessment. The ALJ actually stated that Dr. McKnight-Haas's "marked" and "extreme" limitations were inconsistent with Dr. Sanders's opinion, not that the two opinions were inconsistent in their entirety. In making this finding, the ALJ characterized Dr. Sanders's report as one showing "generally adequate social functioning despite exhibited anxious and depressed mood and affect, that the claimant had appropriate attentional skills, and that he evidenced appropriate thought process and content as evidenced by formulating [well-constructed] sentences." R. 29.

The Court agrees with the ALJ's characterization. For example, concerning social functioning, Dr. Sanders found Plaintiff to have only a mild limitation in maintaining socially appropriate appearance, behavior, and other aspects of social interaction in a workplace.[9] Concerning his attentional skills, Dr. Sanders found Plaintiff to have only a moderate limitation in understanding, remembering, and carrying out short, simple, one-to two-step instructions; maintaining attention and concentration for at least two-hour periods; maintaining a regular schedule with appropriate punctuality; and sustaining an ordinary work routine without the need for special supervision. R. 29, 318–20. Contrary to

---

[9] Dr. Sanders's assessment regarding social interactions is supported in part by Plaintiff's May 2021 Function Report, where he indicated he had no problem getting along with others and stated "I think I get along good with people" when asked how he gets along with authority figures. R. 206.

Dr. McKnight-Haas's assessment, Dr. Sanders identified *no* extreme limitations and only two *marked* limitations: maintaining regular work attendance without missing more than one to two days per month due to psychological signs or symptoms (Dr. McKnight-Haas found an extreme limitation in completing a normal workday and workweek without interruptions from psychologically-based symptoms) and managing finances reliably and independently (Dr. McKnight-Haas did not state an opinion on this ability). R. 29, 319–20. Thus, although the opinions are consistent in the assessment that Plaintiff would have a marked limitation in missing one to two days of work per month,[10] the Court finds no error in the ALJ's finding that Dr. McKnight-Haas's marked and extreme limitations are inconsistent with Dr. Sanders's report.

### 3.   Plaintiff's Daily Living Activities

Plaintiff next argues the ALJ erred in relying on certain activities of daily living to minimize the severity of his impairments and of "both disabling medical opinions," presumably referring to the opinions Dr. McKnight-Haas and Dr. Sanders. He takes issue with the following from the ALJ's decision:

> However, in addition to requiring the ability to understand, remember, or apply information, caring for a dog, taking out the garbage, sweeping, wiping down the table, loading the dishwasher, watching television, and socializing by video chat require a capacity for sustained concentration, persistence, or pace. Additionally, Dr. Sanders advised the claimant had appropriate attentional skills as suggested by his good eye contact and body posture.

Doc. 7 at 12; R. 22–23 (internal citations omitted).

---

[10] The ALJ's RFC states Plaintiff would have one unplanned absence per month.

"While the ability to engage in daily living activities does not automatically disqualify a claimant from receiving disability benefits, the Commissioner may nonetheless consider a claimant's daily activities, among other evidence, in determining whether a claimant is disabled." *Robinson v. Kijakazi*, No. 21-CV-21603, 2022 WL 18155656, at *6 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, No. 21-21603, 2023 WL 136556 (S.D. Fla. Jan. 9, 2023) (citations and internal quotations omitted). Here, the ALJ found Plaintiff "was able to perform a range of activities of daily living despite his severe mental impairment" and noted that Dr. McKnight-Haas's finding regarding Plaintiff's reliance on his mother to assist him with these activities was based on Plaintiff's own report. R. 29. This assessment by Dr. McKnight-Haas conflicts with the self-reported abilities on his Function Report, where he indicated he is able to take care of a dog, take out the garbage, sweep, wipe down the table, load the dishwasher, watch television, and socialize by video chat (R. 203–05), and the ALJ referenced these activities to explain why he found Plaintiff had the ability to understand, remember, or apply information and a capacity for sustained concentration, persistence, or pace. R. 23. However, the ALJ's reliance on these daily activities was not dispositive; as with the normal mental status findings and the inconsistencies with Dr. Sanders's opinion, it was only one factor the ALJ considered. Thus, the ALJ properly considered Plaintiff's self-reported daily activities, along with the other record evidence as a whole, in concluding that Dr. McKnight-Haas's marked and extreme limitations were not persuasive and that Plaintiff was not disabled. *See Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868–69 (11th Cir. 2019) (finding ALJ properly considered plaintiff's daily

14

activities, along with medical records and conservative treatment, in the RFC and subjective symptom analysis).

### 4. The ALJ's Purported Duty to Recontact Dr. McKnight-Haas

Finally, Plaintiff argues the ALJ had a duty to recontact Dr. McKnight-Haas if he "was uncertain as to whether her opinion had accounted for various factors."[11] Doc. 7 at 13. The Court disagrees and finds that the ALJ had no duty to recontact Dr. McKnight-Haas. *Jones v. Soc. Sec. Admin., Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021) ("Moreover, the current regulations provide that, when the Commissioner is unable to reach a conclusion of whether the claimant is disabled, it "*may* recontact [the claimant's] medical source . . . . And that is only one of four possible actions listed in that section.") (citing 20 C.F.R. § 416.920b(b)(2)(i)); *Younger v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-457-MCR, 2022 WL 4377471, at *7 (M.D. Fla. Sept. 22, 2022) (stating 20 C.F.R. § 416.920b imposes no duty on ALJ to recontact medical sources but gives him discretion to recontact a treating physician, physiologist, or other medical source).

## VII. CONCLUSION

For the reasons stated above, remand is not warranted. Although the evidence relied on by Plaintiff may support the additional limitations included in Dr. McKnight-Haas's opinion, he has failed to point to an absence of substantial evidence supporting the ALJ's decision to reject those limitations and find the opinions of Drs. Fair and Peterson persuasive. The Court may not reweigh evidence to find Dr. McKnight-Haas's opinion

---

[11] In making this argument, Plaintiff misquotes the regulations on which he relies, 20 C.F.R. §§ 404.1512(e) and 416.912(f).

more persuasive than Drs. Fair or Peterson, and it may not substitute its judgment for the Commissioner's. Even though the evidence may preponderate against the Commissioner's factual findings, the Court must affirm because the ALJ's decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239.

Accordingly, it is ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 7) is DENIED;

2. The Commissioner's Motion for Summary Judgment (Doc. 8) is GRANTED; and

3. The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 18th day of December, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE